The next case on the calendar is United States v. Wynn and we have Mr. McGuire for the appellant. Good morning. Good morning. This is a busy week for you, Mr. McGuire. It is. You haven't been on the Zoom the whole time. I assume you left at some point, right? I just want to make sure, Ms. Collins, can you hear us okay? I can. Can you hear me? Yes. All right. All right, Mr. McGuire, I assume you reserved a few minutes. Go ahead. Thank you. So I think it makes sense to begin by noting that, in this case, we are not writing on a blank slate. There are, of course, this court's recent decisions in TAB and Richardson that concern many of the claims raised in this appeal. And I also think it's important to note that those decisions are not set in stone. Notably, there is a cert petition pending in TAB and we now have a circuits on defendant's side of this. And so a growing circuit split, including now two courts, the sixth and now the third, who in en banc decisions have agreed with the defense position. And so this is... Mr. McGuire, can we short circuit this maybe? I mean, is really what you're doing, it's perfectly reasonable for you to do, is raising an issue in the hope that you'll be able to get relief, preserve the issue for relief either before this court en banc or before the Supreme Court. So I think that is absolutely part of what we are doing. I agree that this panel, because of the recent decisions in TAB and Richardson, is in something of a bind. And I think that certainly this panel, again, is bound by the decisions in TAB and Richardson. We've identified in our procedure that would permit this panel, after circulation to the entire court, to reverse those decisions. But ultimately, I do, that is a form of en banc decision. The other form of relief would be a full en banc. So, yes. Well, Mr. McGuire, I should know this, but I'm embarrassed to say I do not. Was there an en banc request in either Richardson or TAB? There was. There was an en banc request in TAB that was denied, and the CERT petition was not. And in Richardson, there was a petition for certiorari, which was denied. That's correct. That doesn't concern me because the Supreme Court can do what it will the next time around. But it certainly would be a remarkable thing to me if a panel would try to decide a case in opposition to a recent binding precedent in which en banc review had been denied. And then just circulate that in the mini en banc procedure and say, there's really no question, but that TAB is wrong. Because intervening authority in other circuits, some of which have gone one way and some of which have gone the other way, would somehow undermine it. And it just strikes me as not very plausible. And again, I'm not taking issue with your right to pursue this. It's just our hands seem to be even more tied than you suggest as a panel. And I agree. Certainly, these prior decisions do, in important ways, tie this panel's hands. And you're correct that in some ways, these arguments are made for purposes of en banc and Supreme Court review. That said, I will note, of course, there is a claim, an important claim, of substantive unreasonableness here, but also still sticking with this issue and the issues in TAB and Richardson. I think that, again, while we do have these panel decisions, we are in an unusual circumstance of having two panel decisions and no mention of the governing Supreme Court decision, Kaiser v. Wilkie, that I think really governs the analysis here. Well, I'm not sure of that, Mr. McGuire. I mean, these decisions post-date Kaiser. And it certainly seems to me that the discussion in Richardson purports to apply it without saying the name of the case. It does not say, our deference, case over. This is just the commission interpreting its own thing, and whatever we think about it doesn't matter. The panel goes to fairly elaborate lengths to say this is genuinely ambiguous. And I think you make a quite plausible argument that that's very strange. But it's hard for me to understand why the panel makes that argument, except for the fact that it's aware of Kaiser. So I think I disagree with that characterization of what the court did in Richardson. I think that what Richardson said was actually quoting Stinson, choosing to look at Stinson and not to Kaiser, is emphasized simply that application note one is not, quote, inconsistent with or a plainly erroneous reading of section 4B1.2. Mr. McGuire, also in TAB, I mean, there's no way that panel, I mean, they may not have mentioned Kaiser, but there were supplemental briefs on Kaiser. The oral argument, they discussed Kaiser in the oral argument. There's no chance that they somehow overlooked Kaiser. It's not possible. You don't have to mention it. As Judge Lynch pointed out, just because you don't mention the case in the opinion doesn't mean that another panel can come along after Kaiser was decided and overturn another panel that was also after Kaiser, right? So I agree that it is not the case that the TAB panel was unaware of Kaiser. I think, though, again, what is significant here is that despite being aware of Kaiser, we have nothing in either decision suggesting that the court, that this court has grappled with Kaiser. And I think what's important is Kaiser is a decision that tells courts that they need to look not at the guideline and commentary together and sort of do what has been done in the past and kind of decide whether they roughly match up. Instead, what Kaiser very clearly says is that the court needs to ignore the commentary, look only at the text, examine the text closely using every interpretive tool that the court has, and then only if the court can't figure out independently without falling back on the agency interpretation can the court even look to that guidance. And I think that in this case, in both TAB and Richardson, there's no indication that that's what the court did. I think that is what the court did in Winstead and Havas and in the Third Circuit's recent decision. And what courts that have taken this approach, mandated in Kaiser, have concluded that looking at the plain meaning of this language, that it doesn't include inchoate offenses. It could have. In fact, the crime of violence definition chooses to include a definition that includes attempts. Okay. Now, why are you addressing substantive and regional? I don't want you to lose all your time on that. Sure. And I do briefly to addressing the issue of, this is the second issue that is a procedural issue concerning the question of generic conspiracy. I'll mostly rest on the briefs. I do, though, want to note that the issue with generic conspiracy kind of illustrates what the commission perhaps should and could have done. The commission had placed the conspiracy provision in the guideline itself, perhaps may have had some interpretive commentary in the comments that explains what the commission meant by that. Instead, we have the word conspiracy buried in the commentary. And then, of course, no commentary on that. Am I wrong, Mr. McGuire, that it's sort of 50-50 around the state? It's a little, maybe you're due. Slightly more states have an overt act requirement than don't. But it's hardly the case that there is an overwhelming consensus one way or the other on this. That's correct. I believe it's 36 states and other jurisdictions. And the federal government, federal standard is mixed in that the generic conspiracy statute or the general conspiracy statute requires an overt act. But many of the most frequently utilized conspiracy statutes specifically dispense with that requirement. That's correct. And so in terms of numeric number of statutes, it's mixed federally. I will say that because there is a generic federal definition of conspiracy, in essence, that definition is incorporated into every provision that doesn't have its own conspiracy statute. It's a means of not violating the other statute, but is in a sense a form of liability connected to that. But the narcotics one specifically dispenses with that's the most germane to this particular guideline. So I think that it is the most subject matter, in terms of subject matter, it certainly is the closest. But the question is, what does the commission mean by the term conspiracy? And in reviewing that, and again, I'll note too, that I think there's an understandable focus on the federal law and why would it be that the commission would say conspiracy and have something that doesn't match federal conspiracy. I think the reality is this is a provision that is mostly about prior offenses. And most prior offenses, the vast majority of cases, are not in federal court. So I do see my time is up. I will turn to the substantive issue on response at the court level. All right. Thank you. Ms. Collins, you're up. May it please the court, my name is Patricia Stolfi Collins, and obviously I represent the United States in this appeal. As the court's, as the justices pointed out in questioning Mr. McGuire, the Second Circuit has already decided the primary question advanced in this appeal. As set forth in the government's brief, Jackson, Tabb, and Richardson already decided that a prior federal drug conspiracy conviction qualifies as a controlled substance offense under 4B1.2, application note one is valid. I can rely on my brief with regard to this focus of the Wynn appeal unless the court has questions, but I think the defense attorney focuses on the Kaiser case and his arguments are very misplaced. The Tabb court was aware of the Kaiser decision as conceded by Mr. McGuire today. It implicitly rejected those arguments and it adhered to the Jackson case which relied on Stinson. This court, as I informed the court this week in our 28J letter, has held repeatedly since Tabb and Richardson on at least three occasions in summary orders in the United States v. James, United States v. O'Neill, and United States v. Clinton that it upheld Tabb and Richardson. Further, Mr. McGuire points out that some other circuits have gone in the opposite direction as Tabb. However, the majority of the circuits have taken the Second Circuit's lead and have followed the Tabb case. Again, nothing in Kaiser suggested that it overturned Stinson. In fact, in Kaiser, they listed many Supreme Court cases that they were saying were undisturbed. If you look at footnote three of Kaiser, they listed Stinson as one of those cases. Even if you were to consider that Kaiser unsettled Stinson, it's a reasonable reading. It reinforces the principle of deference to agencies and their reasonable reading of regulations. The including in COVID offenses is consistent with that legislative intent and with the guidelines as pointed out in your questioning of Mr. McGuire. Finally, the requirements that were listed in Kaiser, the application note one meets all of the requirements of a reasonable interpretation that it must be the agency's authority to have that role that they're explaining and have the judgment. Again, I'm going to sound like a broken record. Tabb and Richardson and Jackson should be followed by the court. I don't think there's a reason to revisit it at this point. Unless the court has questions with regard to those arguments, I will move on to the other claim that Mr. Wynn makes in his appeal. The district court in this case acted well within her discretion when she sentenced the defendant to 78 months. Some of the focus that the brief and claims that are made in Wynn's brief are that she made some comments on the record in relation to why he had the gun in the trunk. I went back and read the sentencing transcript and I can focus the court's attention to specific spots. But looking at the totality of the circumstances and everything in context, which is what I think is missing in the arguments put forth by the defendant in this case, several family members spoke and told the court that the defendant was a good father and that they needed him to be in his children's life. I think when the court was making comments, she was focusing her attention on the fact that this was a defendant who has a prior criminal history. This is his third conviction that's related to having a loaded firearm and that he places it in the trunk of the car loaded for anyone who has access to the trunk of the car wouldn't know it's there and he'd be creating a dangerous situation. She went on to carefully consider all of the factors set forth in 3553A. One of the arguments put forth by the defendant is that the sentencing guidelines were calculated wrong so this was substantively unreasonable. The government's position is that Tabb and Richardson apply and that it was a sentencing it was actually in the midpoint of the sentencing guidelines as pertaining to Wynn. She pointed out his offense conduct that he was carrying a loaded firearm with ammunition in the chamber that he was smoking marijuana while driving a car that his actions are extremely dangerous to society and she went through his extensive criminal history and the fact that he had sold marijuana that he had had a pistol illegally on a state conviction that he had assault in the first degree where he shot someone in the leg. Can I just ask one of the things I point to a statement I think the district court said this is a uniquely serious case that requires a uniquely serious sentence and their argument on that is that there was nothing unique about this particular case. What's your response to that? I think that the court was addressing the whole sentencing as a whole. She was not just sentencing the defendant on the underlying possession of the loaded firearm. She also had before her a violation of supervised release in which he continued to violate the conditions of supervised release. He had not only done that with the new arrest and the new conviction but he had not been providing information that was necessary to probation. He had 16 times failed his drug tests. He had not been going to his treatment plan. He had been given many opportunities and so I think when the court used her discretion and was making those comments she was explaining that this is a defendant who's standing before me who has this very serious criminal history and continues on supervised release to not follow the rules and now he's in a position where he has another for the third time loaded firearm and he just throws it in the back of the trunk. I think when she was discussing that this is a uniquely serious case she was trying to impress upon the defendant that his actions were very serious and that he was placing society in danger and she used as an example children may have access to your trunk. This defendant happened to be on state probation and on federal supervised release so if there was reasonable suspicion that he had a firearm a probation officer could have been searching his trunk and happened upon a loaded firearm. Anyone who had access to his car and so I think when she was making the comments about the this is a serious offense this isn't something that you know you're just smoking marijuana in your car you're driving around the city of New Haven with a loaded firearm in your trunk so I think while she made that comment she was very careful to consider all of the 3553a factors and the record from the sentencing articulates that. It's also the case is it not that perhaps the judge overstated by saying uniquely serious but in fact she didn't give a uniquely serious sentence I would say she gave a middle of the guideline sentence which is I don't know how it is in Connecticut in the Southern District of New York it was relatively unusual to give other than the bottom of the guidelines at least back in the days of mandatory guidelines when I last was doing that but it's a guideline sentence it's not even the top of the guidelines let alone any variants from the uniquely serious case it's an equally an overstatement to say it's a uniquely serious penalty. I would agree it's not shockingly high or shockingly low of a sentence it fit into the 3553a factors that she made the record that she was balancing so I think she was just commenting that I think she was upset and standing in the courtroom when she was speaking she had this defendant that just kept violating conditions and had a serious criminal history and she felt like she needed to deter him from continuing this behavior and she wanted to explain to him that this was serious conduct and that he needed to take that into account. I suppose I should ask Ms. McGuire this and I guess I if you can answer it on rebuttal but is it was my understanding that the appeal here is from the sentence in the criminal case not the supervised release violation and that I didn't read the brief as attacking the consecutive nature of the two sentences am I missing something there or how do you read that? I think you're correct I think that he he just is saying the 78 month sentence was but I think in part of his argument he's saying well she calculated the guidelines wrong so that's one of the reasons that it's not appropriate. He did receive a 14-month sentence consecutive to the 78 months but I don't believe that Mr. McGuire at least my interpretation is that he's not contesting that. All right thank you Ms. Colfey-Collins. Mr. McGuire you have two minutes why don't you just confirm what Judge Lynch asked you're not challenging the supervised release sentence or its consecutive nature right? That's correct this is an appeal from the primary sentence that said I do think the existence of the 14-month consecutive sentence does matter in context and part of why that matters is that as the government has said Mr. Wynne was someone who was on supervised release and I think a 14-month consecutive sentence more than amply addresses that aspect of the case. We'll note Mr. Wynne had been on supervision for some time and yes had struggled with substance use but also had been engaged in ongoing treatment including through the court's drug support court program and what I'd ultimately say is other than that fact of supervision that is addressed by the 14-month additional sentence there isn't anything here that really sets this case apart from sentences cases in which defendants received much much lower sentences. The concern here is that the district judge weighed very heavily factual assertions or speculations that are not borne out in the record particularly concerning speculation that Mr. Wynne was engaged in other criminal conduct particularly selling drugs there simply isn't evidence of that the government hasn't claimed that that was the case. It wasn't really the decision here that he's an extremely dangerous person and she cited his quote extensive criminal record which I think is accurate and that he's I think she said violent and reckless that I think all that is supported by the nature of this offense and his criminal record right he shot someone in the leg previously he had another gun possession previously and he has a loaded firearm. What I'd say is in terms of his prior history I think he does certainly have a prior record as many many defendants do as is in fact a requirement for being a felon in possession. I think it is notable that those prior offenses took place within a pretty short window of time Mr. Wynne was in his early 20s as he came before the court he was 30 years old and so I think in a different circumstance but generally in a circumstance very similar to many other defendants and that there was not the aggravating circumstances present that I think tend to drive higher sentences and ultimately as I've said that the court did select what she recognized under the circumstances to be a uniquely serious sentence and it simply was not supported by the factual realities of the case. Right, thank you Mr. McGuire and thank you Stolfi Collins. We'll reserve decision and have a good day.